Zdunski v. Erie 2-Chautauqua-Cattaraugus Good morning, Your Honors. May it please the Court, my name is Christina Heuser. I represent the appellant, Raymond Zdunski. There are two issues before this Court. The first is whether the District Court abused its discretion in denying extension of the discovery deadlines and, in effect, not permitting plaintiffs to engage in any discovery at all. Counsel, is it true that you personally did not even go to the hearing on summary judgment? I learned after the fact that there was a hearing. I wasn't aware of it until after it had happened. I think I actually just learned of it in the decision. How could that be? I mean, what kind of system would you have had in your office? I had actually, when I initiated this case, I was a solo practitioner in private practice on Long Island, and then I went to work for a legal non-profit based in California and transferred all cases that I was handling that fell within the scope of the type of work that they did to that legal non-profit. And the emails were different where the ECF bumps were being sent, and then I returned to private practice, and that's what happened. Unfortunately, you didn't even take discovery. The opposing counsel, defendant, sent you a whole bunch of materials, including the people who had knowledge of this whole process, and you didn't take discovery at all. Is that true? Are you referring to the initial disclosures, Your Honor? Yes. Yes, we did exchange initial disclosures at the outset, and then following that, nothing else happened. And I'm sure I don't- Your Honor, wasn't it incumbent upon you, considering the schedule that the court had given, to make the next move once they sent those things to you? Yes, but pursuant- And you didn't take the next move, right? Pursuant to the scheduling order, actually, the date set in there was November 20th, 2021. That was a typo. The fact discovery was supposed to end on April 13th of 2021, right? It does appear that it was a typo, Judge. If you had any doubt about that, you could have asked the judge to clarify that, but I think it was pretty clear. But it's clear that fact discovery ended on April 13th of 2021, and to follow up Judge Brewer's question, you served no discovery demands at all prior to that date, right? Right, my discovery- And you didn't respond to their discovery demands. The judge had ordered you to do so on April 2nd, gave you 30 days to do it, and you did it a few days late. So how can we find some abusive discretion under those types of circumstances, whatever your circumstances were? I understand it is regrettable, and I'm embarrassed by that, but I'm sure I don't need to remind the court that it was the height of a global pandemic on top of all of the restrictions. So you never moved for an extension, which you probably would have gotten given the global pandemic. You never moved for an extension of the deadlines, did you? I did, at a certain point. I moved twice, actually, and both times the court- After both deadlines had expired, correct? Yes, Your Honor. So you never moved before the deadlines expired? Unfortunately, I had lost sight of the deadlines. Can I ask you a question on the merits? Yes, Judge. I want to understand- The merits, not that. I want to understand precisely how your client claims the training would have interfered with his religious rights. So let me give you a hypothetical, and you can tell me whether this would interfere with his religious rights. The training involved him not saying a word, just sitting there for the whole training. And the training consisted of someone telling him what the law is, New York federal law, that you cannot discriminate against people based upon their sexual orientation. You can't harass them. And they have to be treated equally. They have to be treated with dignity and respect. That was the nature of the training. Would that interfere with your client's religious rights, if he had to understand what the law of New York and federal law was, and that he should treat people with dignity and respect? If just apprising my client of the law was the extent of the training, I don't think, although I cannot substitute my judgment for his, but I don't think that that would have violated his religious rights. However, when he inquired specifically about what the training consisted of, he was told by the police that it was a cultural competency training, and he would be told that gender and sex are different, and a few other things, so it wasn't merely the law. That he was being explained the sensitivities of someone who had a different sexual orientation, how they might be offended or feel that something was harassing to sensitize him and all the employees. That wouldn't offend him, right, and that's not asking him to adopt anything. It's just making him aware of how, in a workplace, people might feel harassed based upon certain comments that might be made or other things that might be done, right? That wouldn't be offensive. In fact, he said he would think about going as long as they did something similar for people with a different religious belief, so. I don't think he said that he would think about going, but he did point out that there wasn't a training for the type of harassment that he was facing in the workplace. However, to your- If the training isn't made available, this Christian harassment training, and made mandatory to all BOCES employees, I would consider attending the cultural competency training. I stand corrected, John. All right. However, to your first point, if, in fact, it were just passive, which we don't know, that's a big assumption because we don't know that it would have just- If you didn't take discovery, you could have asked for, I want the PowerPoint. I want to see the PowerPoint. You could have deposed the people who are going to give the training. What were you going to do? I did ask for that, Judge, and I didn't receive any responses, and my motions to compel responses were denied. Was the discovery period allowed? I'm sorry? Within the discovery period that the court set down? Well, it depends which date you look at, Judge, but the district court felt that I did it beyond. The fact discovery concluded April 9th, and my demands were served on April 22nd, so it was shortly after. To follow up on Judge Bianco's questions, nothing in the training would have required Mr. Zedunsky to violate his Christian teachings. Would it have? Yes, absolutely, it would have because the- Tell me why. The Bible is clear that Christians are to avoid false teaching, so he believes that even by sitting in there listening to indoctrination that differed from what the Bible teaches him. What statute are you referring to? I'm referring to his sincerely held religious beliefs and the objection he raised under Title VII, seeking a religious accommodation. So going back to my first question, you would say if they tell him it's against the law, it's against the law to harass people of a different sexual orientation, that would violate his religious beliefs? No, Your Honor, like I said, just advising him of the law would not, but that's not what the training was limited to. It was not just advising him of the law. It was asking him to subscribe to beliefs that were directly contrary to his religious beliefs. I don't think it would ever have asked him to subscribe to the beliefs that was just informing him of certain things. Well, we don't know that. Where do you find that they asked him to subscribe to certain beliefs in this record? Of course, the record is bare because you didn't use your discovery opportunities. But where do you find anywhere where he was required to accept the teachings as true? There is no record, does he point out. So it's not specifically found in the record, but the possibility certainly was there. There was a case out of a district court in Maryland where there was a very similar factual pattern. And in fact, part of the training was asking the individual who had objected based on his sincerely held religious beliefs. He had to answer certain questions in the affirmative or he was not as regarded. And was that part of his training? Do you know that that was- I don't know, but they were both trainings that were put on by the local pride center, so it's very plausible that that was part of the training. You don't, of course, know. No, but- If you were asked to affirm anything during the trainings. I don't know that, your honor. And you never asked the people who could have put it on, who could have given you an answer. I would have liked to, and I still would like to, and I hope that this court will send the matter back to district court, vacate summary judgment, and give me the opportunity to conduct meaningful discovery on that. Not only that issue, but very importantly, the question of whether granting the requested accommodation would cause undue hardship to the employer. Thank you. Thank you. Well, let me ask you. You're asking us to vacate an order granting summary judgment. What are the facts that do exist in your view on this record? Even, presumably, even though you didn't conduct the kind of discovery that would be expected in the normal course. It didn't conduct any discovery. Excuse me, excuse me. Regular order. What facts are there if summary judgment were to be reversed here on what facts in the record? What are the material issues of fact that presumably would go to a jury in these circumstances? Thank you, Judge. Well, the facts are that my client was employed by the school district. He had an unblemished record of employment. Then this training was proposed. Where in the record does all of this appear? In what form? In the pleadings, Judge. But these are undisputed facts, actually, this particular, these first facts that I'm laying out here. And this training came about, my client was required to attend, and he declined to attend. He expressed that his sincerely held religious beliefs dictate against him attending the training and he sought a religious accommodation. From there, what's disputed is the basis for his termination. Although I think it's more semantics on the part of the appellee, because they allege that he was terminated for insubordination for not attending the training. Which is the same training that he said attendance at would violate his sincerely held religious beliefs. I think there's no denying that he was entitled to an accommodation under Title VII, unless the employer could demonstrate that it would have suffered undue hardship. I think it's also important to point out that although my client worked for a school district, he is an account clerk and worked in their administrative office. So there was no contact with students or anything of that nature. Which is not required, actually, is it? To undergo the training, whether or not you deal with students? Well, there was some reference made to the Dignity of All Students Act, and that specifically talks about preventing harassment and bullying in the school setting. So it's inapplicable here, and that's why I wanted to make that point. But all of those really was part of the school setting, wasn't it? No, he sat at a desk and crunched numbers. That was the extent of his work. Thank you very much. Thank you. We'll hear from opposing counsel. Good morning, your honors. May it please the court, Adam Ferrandino on behalf of the Appellees with regard to this case. Given all the questions that your honors have provided and asked, you took pretty much all my thunder. So what I would say is, plaintiff's counsel is correct. There are two issues here. The discovery issue, which your honor talked about. Unfortunately, that discovery was never done. I had a file motions to get discovery responses. And there was never any motion on the part of the plaintiff for an extension of the deadlines. Correct. I'm pretty certain Judge Crawford would have granted, but there was no such motion. That is correct, your honor. And so the reason why the record might be bare lies at the feet of the plaintiff. We do have a little bit on the record, though, and let me just ask you this before we get to that, though. There was a line in your brief that I found problematic. It said, Title VII does not require defendant appellees to accommodate plaintiff repellent's religious beliefs, because the accommodation would impose an undue hardship on the employer's business operations. You seem to be suggesting in your brief that if it falls under this type of training, that there can't be a problem, that any restrictions on the employer's business area is an undue hardship. Is that what you're saying? No, your honor, and I apologize if it was poorly worded. The point was that in the case of if there's going to be a request for an accommodation if somebody has a particular issue with whatever it is, whether it be this issue presented here or any other issue for that matter. But you would concede that there could be LBGTQ training that could interfere with someone's religious rights. You can see that, and that there would have to be an accommodation. Do you concede that? I can see that, your honor, but under these particular circumstances, with on this record, in this case, I would suggest that those things are not there. If the training involved role playing, suppose the training involved the employees having to get up and role play in some way. And the plaintiff said, I don't want to role play. The employer should make an accommodation there and say, okay, you have to go through the training, but we won't make you role play. Correct, exactly, and we never even got to that point because the program was rolled out and- Ms. Berger sent an email in May when it was a back and forth describing the program from the website. And it describes the curriculum, and it says, real world examples, role playing, and exercises to enlighten participants in ways that lead to more equal, affirming, and productive environment. So, I don't know, were there going to be role plays or not? Not that I'm personally aware of, your honor. With regard to this, it's important to note this. Plaintiff's counsel represented the plaintiff before the New York State Division of Human Rights. Attached to my papers were all the affidavits of all the people who worked and were involved with the school district and BOCES in order to have the training done. So, plaintiff had all of this information back in April of 2019. Moving, quick question, so those records, those materials were put before the district court by you? Yes, they were all sworn affidavits that were previously presented to the Division of Human Rights. In turn, they were attached to my papers. My affidavit is a vehicle to get it in. They're certainly in admissible form. For purposes of the motion, Judge Crawford discussed that specifically in his brief. Counsel, to the best of your knowledge, would this training have involved Mr. Sidonski having to betray his Christian beliefs? No, no one was asking anybody to change their particular beliefs about anything. Well, it doesn't have to be to change your belief. I'm giving you the example because I think it's the easiest one to understand, role playing. Was it going to involve role playing or not? To my understanding, I cannot sit here and say it would or wouldn't. I know what it says in the record. Yeah, on A3068, at least the trainer says this is how they do it, right? And it says you have to understand what it means to be LGBTQ affirmative. I don't know exactly what that means, but that could involve other, Ms. Huser, there was another case in Maryland that involved having to answer certain questions. Anything that's involving that type of interaction, I think, treads on some very dangerous free exercise rights. I will point out that for the court, the way the school district BOCES got this program to do was the BOCES contacted New York State Department of Labor and said, hey, we have an issue here. We'd like to do some training. And as a matter of fact, the New York State Department of Labor is the group that suggested this particular program. I know, but you still have some obligation to know what they're going to do, right? If you're outsourcing the program, the employer should make sure that it's going to accommodate the religious rights of the employee, right? Right, and well, and it was the same program that was put on before the New York State Department of Labor. Could I ask you perhaps to survey what the record, your understanding of the record. What facts were placed before the court? The facts that were placed before the court were the fact that there was a program that was going to be run based on a situation that had arisen in the BOCES staff. Everybody was sent notice that they needed to attend. Plaintiff objected to that notice. All of that is in the record. Yes, he did not attend. He was then brought in to have it discussed. He also, not only was he there by himself, but there was also a union representative that was with him as well. He was advised that he needed to attend the program. And just if I could just ask for a footnote here. Those facts that are in the record appear in what concrete form? That is, how do they get before the court? They're in the affidavits of all the individuals that were attached to my affidavit in support of the motion for summary judgment, which were all sworn. I'm sorry, I interrupted you. Go ahead. That's fine, Your Honor. Then afterwards, they attempted to see if there could be an accommodation made. It was determined that an accommodation couldn't be made that would weaken the message of the program. The plaintiff signed a memorandum, which indicated that he- What does that mean, that weakened the message of the program? If the accommodation was that you only have to attend part of the program, if there was, for example, role play. And he opted out of that, would that be, is your client's position is that he had to, in order to be consistent with what their view was of what they needed to comply with, he had to go to the whole program no matter what it was about? Well, he could have- He could have opted out of a portion of the program? If that was an issue that it's not in the record that it came up, I certainly, I mean- What is the law on that, though? The- This is what the EEOC says. If the training required or incurs employees to affirmably support or agree with the conduct that conflicts with the employee's religious beliefs or signal their support of certain values that conflict with their religious beliefs, it would be more difficult for an employee to establish that we pose an undue hardship to accommodate an employee who objects to participating on religious grounds. This is their guidance on training. I would disagree- I think she cited this in her papers, I think. Right, but there's no, the purpose of the training was to make a consciousness and awareness. It's not, it was not to make anybody subscribe to anything. They have to have the ill will. It's not that they, that's what they wanted, but if what they're requiring of him, in terms of his participation, would conflict. The EEOC says that would be a difficult position for the employer to argue that it's an undue hardship, right? But he never asked to attend a party. Well, no, he basically, and he signed the memo understanding, back to your honor's question. He signed the memo understanding if he didn't attend, one of the possibilities was termination. And so- And that's in the record. That's in the record as well. So we never get to all of this because he refused from the get go. He wasn't going. He told people he wasn't going. He told people outside of the meetings that he wasn't going. He told other employees that he wasn't going. It's in the affidavits that are all attached. So, quite frankly, I don't, no accommodation was going to get him there anyway. I think that's pretty clear in the record. It's even clear in the record with regard to somebody who he spoke with about and was upset with her living situation. So- In connection with what the record, as you were saying, I'd like to have you continue if you could. Sure. Is it correct that in response to the plaintiff's complaints about what had already happened, Boses advised that he file a formal complaint with HR, is that part of the record? That is part of the record as well because when the situation was brought up and this was the training to do, he said, well, and your honor pointed out, well, I'll do it if we do this. Well, there never been a complaint made by the plaintiff that there was any situation or problem with regard to that. Had he filed a complaint to say that there was some kind of situation or problem for that, then Boses would have acted accordingly. And wasn't it true that there were two other Christians who attended the training and just let it roll off their back or whatever? Yes, exactly. There were two women who initially objected and then subsequently attended the program. They might have just not wanted to lose their job, though. That doesn't mean they necessarily subscribed to what was, weren't offended religiously by it, right? They would have lost their jobs as well. Well, at the end of the day, it's about- You're not asking us to interpret that it couldn't be religiously offensive just because some employees opted to go and not lose their job, right? You could argue that, your honor, but at the same point in time, they did. They have had no issues since. And back to finish your timeline, your honor, is the fact that he still continued not to go. He signed it. He was subsequently terminated, which he knew was a possibility. And he was terminated not for his religious beliefs. He was terminated for not going in subordination, for not complying with what his job required, which was to attend a training program. And Boses was acting under state law, wasn't it? It was. When it initiated this training? It was. And what accounts, from what you've said, there was disparate treatment between the transgender employee and the plaintiff, right? Yeah, that was exactly it. There were concerns. I think it's- They're treated differently. There was disparate treatment, and what accounts for that? What does the record say? The record, there's indications in the record about problems with regard to bathrooms and other types of things like that. So the Boses, which they have the ability to do and the obligation to do, should they determine that there's an issue that they need to address, is to have some kind of training to address that training, to address that issue. And that's what they did. Thank you. Thank you, counsel, for your time. Thank you. Much of what was said by Appley's counsel is contradicted and certainly disputed, which I think is important to note, since this was a summary judgment motion. Yes, that's true. But in what form are they disputed? How did you dispute it? The statement of disputed material facts that was presented to the court and the memorandum of law in opposition to the motion for summary judgment. Also, I think it's important to- So, that statement of material facts and dispute was compiled by you and presented by you, in effect, on the basis of the information that opposing counsel had submitted to the court. Is that right? On the basis of the- I'm not suggesting it's a bad thing. I'm just asking, is that accurate? Well, it was on the basis of the information that was conveyed to me by my client, and then looking at what had been submitted by defendant's counsel. Was there an affidavit by your client? There was not. It seemed to me that- On what basis did you set forth the material issues that were in dispute, which presumably would require a trial by jury? I disputed that his affidavits were in admissible form. I also felt that what he submitted was insufficient to meet the summary judgment burden, which he, as the move-in, has the burden. I had no burden. Now, obviously, I miscalculated how the district court judge would view things. But if I could, with my very brief remaining time, I would like to revisit the Title VII analysis, because I think it's so inextricably intertwined with the summary judgment analysis. Because the Title VII analysis is a very fact-intensive analysis when we get to making the determination of whether granting the requested accommodation would impose an undue hardship or burden upon the employer. And they have just said flippantly, well, we determined that it would create an undue hardship. But they never actually, there is nothing in the record that shows that they actually did an investigation. The judge thought it would be not de minimis for BOCES to be in violation of New York State law. And he thought that was a burden for if they couldn't get all their employees to go to this training. He has that in his decision. You read his decision, of course. I did read the decision. I don't agree with it, which is why I'm here, of course. And the analysis, although that was his finding, it was unsupported by anything in the record because the law requires that they engage, firstly, in an interactive process, which they failed to do. But also, they have to do an actual analysis of possible accommodations, explore them, and then- You're asked for an accommodation, except not to go. Well, that is an accommodation. The employer could have come back and said, well, we can't grant you that accommodation, but we can offer you this reasonable accommodation. We could say it's an undue hardship on an employer to say they can exempt an employee from this type of training. To Judge Pooler's question, if your client, instead of saying, I won't go, said, well, I'm willing to go, but I won't do X, Y, and Z, or I'll go to this portion, or I'll sit in it if something is offensive to me, I want to request to leave, all those things could have been explored. And maybe if they rejected those, you might have a much stronger position. But none of that interactive process, they didn't end the interactive process. Your client said, I'm not going, right? They never initiated an interactive process, Your Honor, and the burden was on them to do so. They told him that he had to attend or else be terminated. And frankly, that's not respecting his religious liberty. The law is very clear that he had a right to stand by his sincerely held religious beliefs. The law cannot require him to violate his own conscience, and that's what was being asked of him. And I would submit to you all that the law is also clear that the courts don't delve into the validity of the belief. It's a subjective test. If this is his sincerely held religious belief, and he articulates it, that's sufficient. And the sincerity of his belief was never questioned by the employer. They just didn't see any need or value in accommodating him. They put, they elevated the desires of those in the workplace who held different beliefs above his Christian beliefs. Thank you, Ms. Archuleta. Thank you. Appreciate it. We'll reserve the decision.